*534 Cuma per
Johnson, J.
The: facts ascertained by the special verdict, stated in their .chronological order, are con-, cisely these. The defendants, Thos. Crowder, Henry Thomas Perfect and Jas. B. Clough,,-all British subjects were partners in trade. The two .former, Crowder and Perfect, resided in Liverpool, England, and' the,latter,. Clough, in Charleston, South Carolina, and carried on business at these places respectively, under the firm of Crowder, Clough & Company. On the Sth Aug., 1825,, the House in Liverpool committed an act of Bankruptcy, and on the 20th day of the same month, - Crowder and Perfect executed an assignment in the name of Crowder, Clough & Co. under their hands and seals, to Thos. Case, of all and singular the.debts, estates an& effects of the said Crowder, Clough & Co. within the United States in trust for all the creditors of Crowder, Clough & Co. rateably, and shortly after a Commission of Bankruptcy issued in England against the said Thos. Crowder, and Henry Thos. Perfect. On the 19th Sept, of the same year, and shortly after these proceedings were had, the plaintiffs and others claiming to be creditors of the said Crowder, Clough & Co. and residing here, sued out writs of attachment, which were levied on their effects, estates and credits which were found here. At this time Jas. B. Clough had-left this-State, but was still in the United States, and on his going to Liverpool afterwards, a Commission of Bankruptcy issued against him also there on the 10th June, 1826. On the return of the attachments, Thomas Case, through his attorney in fact, interposed his claim to the effects so attached, and the question now submitted, is, whether he is entitled to them under the deed of assignment so made. If he is, it follows that the plaintiffs take nothing by their attachment; if not, then of course this motion must prevail.
*535 This as a question of international law, is in itself, 'highly interesting, but is rendered more so by the zeal and ability which it has elicited from the counsel on both sides, and the learning which has been put in requisition. By recurring to the facts stated, it will be seen that the ‘Commission of Bankruptcy against Crowder and Perfect was prior in point of time to the plaintiffs attachment, and the question has been raised, but not with much confidence, that the proceedings in bankruptcy operated as a transfer to the Commissioners of all the property which belonged to Crowder, Clough & Co. wheresoever it might be found to the exclusion oí the subsequent attaching creditors. But the case of Topham vs. Chapman, 1 Const. Rep. 229, is decisive of that question. In that case, the question arose directly beiween the assignees of a bankrupt in England, and attaching creditors here, and although the attachments were issued subsequently to the suing out of the commission of bankruptcy, the Court held that it did not create such a lien on-the property here as gave it the preference over the liens created by the attachments of the attaching creditors, and that judgment is, I think, very fully sustained both by principle and authority.
A question of more difficulty arises out of the claim set up in behalf of Case, founded on the deed of assignment, of the 20th Aug, 1825, also prior to the plaintiffs attachments, by which Crowder and Perfect, in the name of Crowder, Clough & Co. have assigned to him all their property in the United Stales.
Independently of the interest which creditors residing here may have in the property assigned, there is no question that as between the parties the assignment would be binding here as well as in England, and supposing it to have been voluntary and binding according to the laws of that country, and nut inconsistent with our laws, the *536 Courts here would upon the well settled principles of universal law be bound to give it effect and operation.
But it is objected for the plaintiffs—
1st. That this assignment being by deed and made by two of the partners only, is not binding on the third and is therefoi’e void.
2nd. That the assignmentwas either in aid of the Bankrupt Laws of England, and calculated to give them an effect here inconsistent with the laws of this country, and therefore void; or that the rights of Crowder and Perfect in the properly assign'ed, vested in the Commissioners in virtue of the proceedings in Bankruptcy, and the assignment was therefore nugatory and inoperative.
As to the first, the books furnish numerous dicta which sustain the position that partners cannot bind each other or the firm of which they constitute a.part, only by deed, but on examination of the cases, it will be found that they relate to transactions that are purely mercantile^ and that they depend on the principle that a partner can do no act which will be binding on his firm, which is inconsistent with or foreign to the object of their association.
Simple contracts, such as promissory notes, bills of ex-' change, open accounts, and others of like nature, are according to usage regarded as mercantile contracts, and the co-partnership is entered into with reference to the powers of each partner to bind his firm in this mode, and for that reason it would seem one partner cannot bind his firm in a penal bond, (Bacon Abr. Merchant, C.) nor can he transfer the real estate of the firm used for the purposes of carrying on business by deed, because it might in effect, defeat the object of partnership. (Ibid.) If, however, the buying and selling of lands and other real estates which can only be transferred by deed, was the *537 -object of the co-partnership, no one will doubt but that a partner might bind his firm by such aii instrument.
I apprehend too, that where a seal will not change or vary the liability and is not essential to the nature of the contract, that then also the addition of a seal will not vitiate it; as in the case of a release, in which the authoi'ities all agree that it is good, notwithstanding the addition of a seal; (Com. Dig. tii. Merchant, D. Days Ed. note H, sec. 151, where the cases on this subject are collected,) and they proceed on the principle that the release inde-, pendently of the seal contains intrinsic evidence of the payment of the debt, and is therefore good against the firm.
Again, let us suppose that at the foot. of a bill of parcels a partner had acknowledged in the name of the firm and under seal, that in consideration of a sum specified he had sold and delivered to his customer the goods therein contained, would it be doubted that such a memorandum would be a good bar to ail action brought by the firm for the goods themselves or their value ? Í think not.— And it appears to me very clearly, that if Crowder and Perfect were in other respects competent to make the as-' signment in question, it is not vitiated by the presence of a seal. In the case of Harrison vs. Sterry, 5 Cranch, 300, it was held, and I think on very sound principles, that an assignment of funds for the payment of debts, was in the coui-se of trade. Indeed every partial application of funds to the payment of debts, whether it consists of cash, or goods, or any thing else, is in effect an assignment for that purpose and binds the firm. And if in the course of things, a general assignment becomes necessary, there can be no reason why it should not be equally binding. The principle is the same whether it be partial or total, and it follows that in either ease onq may bind the whole.
*538 It is said, however, that the assignment was not obligatory on Jas. B. Clough, the partner resident here, and I concede that as between themselves, Crowder and Perfect had no control over the interests of Clough, and that their assignees could only take theirinterest in common with' Clough, but this was an appropriation of the whole funds'of the concern to the payment of. all their debts, and whether he had any interest or not must depend .on a surplus remaining after the payment of the debts. The whole was applicable to that object, and if the whole was necessary, he was bound to that extent.
The remaining questions’which I deem it necessary to notice, arise out of the second objection above stated. It is that the assignment was in aid of the Bankrupt taws of England, and calculated to give them an effect here, inconsistent with the laws of this country, and therefore Void; or that the rights of Crowder and Perfect in the property assigned by virture of the proceedings in Bankruptcy were vested in the Commissioners and by relation back to the act of Bankruptcy, and the assignment was’, therefore, nugatory and inoperative. It has been before shewn that in the conflicting' operations of .the English Bankrupt Laws and our Attachment Laws unaided by extrinsic circumstances, the latter would take the precedence of the former as between the assignee of the Bankrupt and the attaching creditors, and it follows as a necessary consequence that if this assignment was a constituent part of the proceedings in Bankruptcy and was in aid of the Bankrupt Laws, that it cannot- have an effect of itself either inconsistent with or. to an extent beyond the law itself. Now there are many circumstances connected with this assignment, which favor the conclusion that it was intended to aid the operation of those, laws. It was made after a notorious act of Bankruptcy, and is In its .terms merely provisional, evidently with an *539 eye w> the consequences which followed.. Being an assignment for the benefit of all creditors rateably, it was in, itself an act of Bankruptcy; and by the laws of England such an assignee is held to be a trustee for the assignees under the Commission of Bankruptcy.
The terms of the English Bankrupt Laws which entitle the Bankrupt to his discharge, is a general and unqualified surrender of all his property, and unquestionably extends as between himself and the assignees to property in a foreign country; and if assignments executed under circumstances like these are to have the. effect and operation contended for on the part of Case, they would soon grow into common use and thus give an effect to those laws which are denied to them by the well settled principles of international law.
The alternative contained in the objection above staged, is, I think, equally Conclusive against the claims of Mr. Case. There is no doubt that under the former statutes of Bankruptcy, the assignment by the Commissioners vested in the assignee all the property of which, the Bankrupt was possessed, and that too in relation back to the act of Bankruptcy, by avoiding all intermediate transfers, (Com. Dig. Tit. Bankrupt D. 26,) and the recent act under which these proceedings are said to be the first that were had, makes no change which can affect the question under consideration. By, the 78th section,, all transfers of property, &c. made more than two months; before suing out of the Commission and without notice of the act of Bankruptcy are declared to be valid, leaving the law with respect to those made within that period; as it stood before, and by necessary implication avoiding all made within that period, (Kennedy’s Bankrupt Law.) The act of Bankruptcy in this ease was committed on the 8th August, 1825, and although the special verdict does not ascertain the day on which the Commission was is *540 sued, it was prior to the suing out of the attachments o£s the 29th September following, and the assignment having been made between these periods, was necessarily within two months' of the suing out of '.the Commissions and was therefore void, unless it was to be regarded as in aid of the Bankrupt Laws, the consequences of which, have been before noticed. Notwithstanding the difficulty in whieh the question has been involved and the apparently conflicting opinions whieh have been entertained in relation to it, I .think I may venture safely to lay. it down as well settled law, that the. proceedings under the Bankrupt Laws.of England transfer to the assignees all the interest which the Bankrupt had in the property' assigned whether it was found in England or in this dr any other foreign country. In support of this position it might perhaps be sufficient to rely only on the case of Topham vs. Chapman before referred ip, in which upon a review of most of the cases it is conceded to the extent necessary for the purposes of this case and in which my brother Nott, who delivered the opinion of the Court comes to the conclusion that by the' assignment, all the goods of the Bankrupt ubieunque fuerint vest immediately. in the assignees. I will add to this, however, another case of more recent occurrence, and which has also a strong bearing on a branch of this case before noticed. In Holmes vs. Remsen, 20 Johnson, 259, Mr. Justice Platt after a very laborious and learned investigation of the doctrine and all the cases on the subject, reasons himself to the same conclusion. He observes “ that the true principle is that the assignees of a Bankrupt are on the same and no better footing than the Bankrupt himself in regard to foreign debts. They take subject to every Equity and subject to the remedies provided by the Laws of the foreign country where the debts are due, and when permitted to sue in foreign countries it is not as assignees *541 having an interest, but as representatives of the Bankrupt.” In the case of Hunter vs. Potts, 4 Term. Rep. 182, the doctrine was carrried so far, that a creditor residing in England, who had attached the money of a Bankrupt abroad was in an action brought against him on his return, to England, held to be liable to the assignees as for money had and received to their use.
The deductions from these views necessarily lead to the conclusion that regarding the assignment as in aid of the Bankrupt Laws of England, it can have no effect beyond the law itself, and that under the proceedings in Bankruptcy the legal right in the property vested in the assignees as between them and Crowder, Clough & Co. by relation back to the act of Bankruptcy; so that in any view of the matter Case took nothing under the assignment, and led the Court to the adoption of the order made in the cause at the last term. The motion is granted and leave given to the plaintiff to enter up judgment on the special verdict. Judgment reversed.